o

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO R., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. CV 18-00291-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Alejandro R. ("Plaintiff") appeals from the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB").[1] The Commissioner's decision is affirmed and this case is dismissed with prejudice.

## I. BACKGROUND

On November 25, 2013, Plaintiff applied for DIB, alleging disability beginning February 8, 2013. See Administrative Record ("AR") 180-82. After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). See AR 25. Plaintiff appeared

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

and testified at a hearing held on May 17, 2016. See AR 43-79. On August 19, 2016, the ALJ issued a written decision finding Plaintiff ineligible for disability benefits. See AR 19-42.

The ALJ found that Plaintiff had the severe impairments of paroxysmal atrial fibrillation with pacemaker implantation; cervical facet syndrome with multi-level protrusions and annular tear; lumbar spondylosis with multi-level protrusions, radiculitis and facet syndrome; hypertension; obesity; major depressive disorder; general anxiety disorder; agoraphobia with panic disorder; and adjustment disorder. See AR 27. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following restrictions:

> He can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He should avoid working around unprotected heavy machinery or unprotected heights. He can understand, remember, and carry out simple job instructions. He can maintain attention and concentration to perform simple, routine, and repetitive tasks. He can have occasional interaction with coworkers and supervisors, and no direct interaction with the general public. He can work in an environment with occasional changes to the work setting and occasional work-related decision making.

AR 30. The ALJ determined that Plaintiff could perform several jobs at the light, unskilled level: garment sorter, assembler, and electronics worker. See AR 36. Consequently, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. See AR 37.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-8. This action followed. See Dkt. 1.

## II. DISCUSSION

Plaintiff argues that the ALJ: (1) improperly discounted or disregarded evidence of Plaintiff's spinal, cardiac, and mental impairments, (2) improperly discounted his subjective symptom testimony, and (3) failed to credit testimony from Plaintiff's wife. See Dkt. 24, Joint Stipulation ("JS").

### A. Evidence of Plaintiff's Impairments

#### 1. Spinal Impairment

The ALJ gave "little weight" to the opinions of Plaintiff's treating physicians, Dr. David Shawa and Dr. Adam Wietzman. See AR 33-34. The ALJ reasoned that their assessments were not consistent with their own treatment notes. See AR 33. The ALJ also noted that their assessments were made in the workers' compensation context and thus may not be impartial, and also consisted of opinions about whether Plaintiff was disabled, a matter reserved for the Commissioner. See AR 34.

Where, as here, a treating physician's opinion is contradicted by another doctor, an ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1164 (9th Cir. 2008). An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray v. Comm'r of SSA, 554 F.3d 1219, 1228 (9th Cir. 2009).

Here, the Court agrees with Plaintiff that the ALJ should not have discounted Plaintiff's treating physicians because their opinions were offered in the workers' compensation context. An ALJ is not entitled to reject a medical opinion based on "the purpose for which medical reports are obtained."

Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1200 n.5 (9th Cir. 2004) (rejecting plaintiff's contention that doctor hired by workers' compensation insurance company may have been biased in evaluation); see also Heun-Davidson v. Berryhill, No. 16-1569, 2017 WL 5054657, at *6 (C.D. Cal. Nov. 1, 2017) (noting that ALJs may not disregard medical opinions simply because they were elicited in workers' compensation proceeding). Likewise, the ALJ should not have rejected the doctors' conclusions because disability is a determination left solely to the Commissioner. To be sure, a doctor's opinion on the ultimate disability determination is not entitled to any special significance. See SSR 96-5p (providing that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance"). But "merely because a treating or examining doctor opines that a plaintiff is disabled is not a permissible reason to reject that opinion." Daniel v. Berryhill, No. 16-0651, 2017 WL 4082368, at *3 (C.D. Cal. Sept. 13, 2017).

But any error by the ALJ was harmless. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."). Neither doctor offered any opinion about any functional limitations. Instead, they opined that he was "disabled" due to his spinal issues.[2] See AR 284, 364. Such a conclusory opinion may be rejected.

Moreover, the doctors' opinion was, as the ALJ noted, not supported by their own treatment records. The doctors treated Plaintiff from 2012 to 2014 for his complaints of back and neck pain. See AR 284-95, 361-73, 381-84. As the ALJ noted, their records generally reported only mild to moderate decreased range of motion, some tenderness to palpation, and negative straight

---

[2] Dr. Weitzman stated that Plaintiff had reached "maximum medical improvement" while on temporary disability. AR 364.

leg raising. See AR 33-34; see also AR 284, 287-90, 361-373. Dr. Weitzman's notes reflect no supporting findings on physical examination beyond a "slow and deliberate" gait and "generalized deconditioning" in the lower extremities. AR 363. While Dr. Shawa noted in November 2012 marked tenderness in the neck and back, AR 291, in January 2013, neck tenderness was mild-to-moderate, AR 292, and by July 2013, examination of the back "did not reveal any tenderness," AR 372. Apart from Plaintiff's subjective complaints, the doctors' treatment notes do not suggest that Plaintiff was completely prevented from working. The ALJ therefore gave a specific and legitimate reason to give little weight to the treating physicians' conclusory opinions that Plaintiff was disabled.

Plaintiff argues that the ALJ should have further developed the record on Plaintiff's lack of treatment between 2014 and 2016. See JS at 25. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Ample records show that Plaintiff denied back pain in the same years that he apparently stopped seeking treatment, strongly suggesting that Plaintiff stopped seeking treatment because he no longer needed it; there was therefore no ambiguity for the ALJ to pursue.[3] Plaintiff also argues that the ALJ should have developed the record on functional limitations that Drs. Shawa and Weitzman might have assessed, if asked. Plaintiff cites no law

---

[3] When asked at the hearing why he had not had more treatment for his back, Plaintiff replied, "To tell you the truth, I don't know." AR 51. He claimed that when he told doctors that his back hurt all day and he could only sit for a few minutes, they only gave him medication. Id. This contradicts Plaintiff's medical records, which show that he denied back pain between 2014 and 2016.

suggesting that ALJs must affirmatively contact for clarification treating doctors who issue conclusory, self-contradictory opinions. Plaintiff has not identified legal error committed by the ALJ in this regard.

### 2. Cardiac Impairment

Plaintiff began experiencing chest pains with palpitations in 2012 and was diagnosed with atrial fibrillation (episodes of rapid, irregular heartbeat). See AR 330. A January 2013 echocardiogram was within normal limits, showing only mild left ventricular hypertrophy. See AR 335-36. Plaintiff continued reporting palpitations, and in August 2013 (after another echocardiogram reported mild findings), he had a pacemaker implanted. See AR 332-33, 350-51. He reported feeling better and denied chest pains and palpitations in December 2013. See AR 309-10. In May 2014 and January 2015, Plaintiff complained of chest pain, despite normal EKG and stress tests. See AR 388, 392, 395-96. A cardiologist concluded that the chest pains were probably due to reflux, ulcers, or muscle pain. See AR 398.

Between 2013 and 2016, Plaintiff reported to the emergency room once or twice a month complaining of abdominal or chest pain. See generally AR 404-774. In almost every visit, tests and imaging were normal and Plaintiff was treated conservatively before being discharged upon reporting improvement.[4] See, e.g., AR 655 ("States he ate some spicy food recently that might have triggered it."), 692 ("[Patient] has had ischemic cardiac workup in the past which has been all unremarkable. However, he has presented to multiple emergency departments on multiple occasions with a complaint of chest pain. Currently he is asymptomatic at this time. It appears that all his symptoms

---

[4] According to Plaintiff's wife, Plaintiff admits himself to the emergency room whenever he feels his heart rate increase and has shortness of breath. See AR 856.

6

resolve after his palpitations resolve."), 500 (noting that pain was likely due to Plaintiff's gastritis, peptic ulcer disease).

No doctor has opined that Plaintiff's heart condition causes functional limitations, let alone limitations that would exceed the RFC assigned by the ALJ. On the contrary, diagnostic findings were universally unremarkable, and two state agency consultants opined that Plaintiff could perform light work. Substantial evidence supported the ALJ's conclusion that Plaintiff's cardiac impairment would not prevent Plaintiff from performing light work.

### 3. Mental Impairments

In 2014, Plaintiff reported to a consultative examiner that he felt anxious due to his heart issues. See AR 301. He denied any history of psychiatric hospitalization or treatment; he also denied hallucinations. See AR 303. His mental status examination was generally within normal limits, and the examiner diagnosed him with anxiety disorder and adjustment disorder. See AR 303-04. The examiner assessed that Plaintiff could perform simple one to two step tasks, could relate and interact with supervisors, co-workers, and the public, and was moderately limited in adapting to work environment stresses. See AR 305. Also in 2014, two state agency consultants opined that Plaintiff did not have any severe mental impairments. See AR 80-91, 93-106.

Two years later, at one of his emergency room visits for increased heart rate, Plaintiff was told that anxiety might be causing his heart symptoms and was referred to a psychiatrist. See AR 856. Between January and April 2016, he received mental health treatment at Enki Health & Research Systems. See AR 855-73. At his initial intake evaluation, Plaintiff reported—contrary to his 2014 examination—that he had experienced visual and auditory hallucinations for over a decade. See AR 863. He also reported to staff at Enki that he experienced depression, lack of sleep and appetite, and passive thoughts of suicide, preferred to be alone but also worried about being alone, and worried

7

about being in small spaces. See AR 856, 858, 865. He was diagnosed with major depressive disorder, generalized anxiety disorder, and agoraphobia with panic disorder and was prescribed Xanax and Lexapro. See AR 869, 872.

Substantial evidence supported Plaintiff's mental RFC. The ALJ gave significant weight to the examiner's 2014 opinion but little weight to the consultants', given that Plaintiff's more recent mental health treatment suggested at least some severe mental impairments.[5] See AR 34-35. As discussed further below, Plaintiff's subjective symptom testimony about his mental impairments was extreme and properly discounted by the ALJ. The ALJ nonetheless incorporated RFC restrictions to address Plaintiff's 2016 mental health treatment and some of his testimony—for example, by requiring that he have only occasional interaction with coworkers and supervisors and no direct interaction with the general public. These were greater restrictions than any of the medical opinions called for and appropriately addressed functional limitations caused by Plaintiff's mental impairments.

**B.** **<u>Subjective Symptom Testimony</u>**

The Court engages in a two-step analysis to review the ALJ's evaluation of a claimant's symptom testimony. "First, the ALJ must determine whether

---

[5] Plaintiff argues that the ALJ improperly gave great weight to the 2014 examiner's opinion. See JS at 13-14. Plaintiff criticizes the physician's opinion for not reflecting Plaintiff's subjective complaints of anxiety. As explained herein, the ALJ properly discounted Plaintiff's subjective symptom testimony. Furthermore, the examiner's conclusions were based on his examination of Plaintiff, including his normal speech, coherent thought processes, lack of hallucinations or suicidal ideation, ability to remember objects and life events, ability to spell simple words backward and forward, and ability to subtract 7 from 100 but no further. See AR 303-04. As for Plaintiff's anxiety, Plaintiff reported to the examiner only that he related his occasional rapid heartbeat to anxiety. See AR 301. The ALJ addressed in the RFC Plaintiff's later, more severe allegations of anxiety.

8

the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (citation omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. at 1014-15 (citation omitted).

At the hearing, Plaintiff testified that he was born in 1970 and went to school in the United States between age eight and the tenth grade. See AR 46-47. He cannot read or write in English and can only speak and understand a little. See AR 47. Once a month, his heart "jumps," and he has heart pain for a few seconds several times a day, which medication alleviates for about four hours. See AR 49-50. He receives no treatment for his back except for medication, and no one has ever told him that he needs back surgery. See AR 51. He has back pain all day and cannot stand or sit for more than thirty minutes. See id. His back pain extends to his hands, his neck, and his legs. See AR 59. He cannot walk for more than two blocks. See AR 60. He cannot lift more than 10 pounds. See id. He sleeps "almost all day" because of his depression. Id. He experiences depression and anxiety, taking pills and seeing a psychiatrist for treatment. See AR 54. He cannot be alone in his house, cannot bathe himself, cannot dress himself, and cannot remember to take his medication. See AR 55-56. Every day, he goes with his wife to her place of work and stays there until she comes out. See AR 56.[6] He waits in the parking lot, sitting, standing up, and walking a little bit—15 minutes sitting and then 15 minutes walking until he feels pain. See AR 62-63. He does not go anywhere

---

[6] In his function report, Plaintiff described what he did all day as: "Go with wife to take kids to school, go to my sisters [sic] house, sometimes my mother and father in laws [sic] house, or stay home." AR 219.

9

beyond the parking lot, such as the library or store, because he is afraid to be alone. See AR 63.

The ALJ found that Plaintiff's testimony was not supported with the objective medical evidence "for the reasons explained" in the decision. AR 31. The Court agrees, given the evidence set out above in Section II.A. However, lack of objective medical evidence cannot form the sole basis for discounting pain testimony. See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005).

The ALJ gave further clear and convincing reasons for discounting Plaintiff's testimony. First, the ALJ noted that Plaintiff received conservative treatment for his cardiac impairment. See AR 32. While he visited the emergency room about once a month, each time he was treated conservatively (for example, with aspirin) before acknowledging improvement and being discharged. It does not appear that he required any further treatment, and as he acknowledged at the hearing, medication kept him from experiencing more than a few seconds of pain a few times a day.

Second, the ALJ reasoned that Plaintiff's lack of treatment for his back pain in the years preceding the hearing undercut his testimony. See AR 32. According to Plaintiff, he could not stand or sit for even thirty minutes because of his back pain; elsewhere, he testified he could stand for no more than an hour. See AR 51, 58-59. He testified that the pain radiated through his back, both legs, his hands, and his neck, and it prevents him from working. See AR 55, 59. Yet he denied back pain at numerous points between 2014 and 2016 and sought no treatment for any such pain. This contradicted his claim of disabling back pain "all day." AR 51.

Third, the ALJ accurately noted inconsistencies between Plaintiff's mental health allegations and his medical history. In 2016, Plaintiff alleged hallucinations for 13 years, despite denying hallucinations to the consultative examiner in 2014. See AR 34. As the ALJ pointed out, had Plaintiff in fact

experienced hallucinations for over a decade and the variety of other severe mental health symptoms he reported, he presumably would have sought medical treatment before 2016. See id. The ALJ also pointed out inconsistencies between Plaintiff's mental health examinations in 2016 that occurred a few days apart. See AR 34 (citing AR 859-61, 863-65). In the first examination, Plaintiff alleged a 13-year history of auditory and visual hallucinations, suicidal ideation, and a short attention span. See AR 859-60, 863-66. Two days later, the only "core problem" found was weight management. AR 861. Plaintiff had normal cognitive functioning, no hallucinations, normal speech, and a normal thought process with no psychosis. See AR 859-60.

The Court does not address any further reasons given by the ALJ for discounting Plaintiff's testimony. The above reasons were clear, convincing, and sufficient, and thus any error in the ALJ's additional reasoning would be harmless.

### C. **Wife's Testimony**

Petitioner's wife testified at the hearing and filled out a third-party function report. See AR 64-71, 227-39. The wife states that Plaintiff needs help with everything. See AR 65. He is so depressed that he does not want to do anything without direction. See AR 66-67. He no longer does household chores or plays with his children, and he wants to be close to the hospital (which is near where she works). See AR 67-68. Plaintiff has panic attacks when alone but uses the toilet alone. See AR 231-32. Plaintiff comes with her to work, falling asleep in the parking lot and coming with her to meetings outside the office. See AR 68-69. If he does not come with her to work, then he is dropped off at a family member's house. See AR 232.

The ALJ concluded that Plaintiff's wife's observations, which were "comparable" with her husband's allegations, were not supported by the

medical evidence. AR 31. As explained above, the ALJ properly discounted her husband's allegations, which is a germane reason for rejecting hers. See Valentine v. Comm'r, SSA, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ also noted inconsistencies in Plaintiff's and his wife's subjective statements, including that Plaintiff stated that he could not drive due to his back pain ("I can't drive due to spasms and pain"), while she stated that he often drove and looked for street parking while she was at work. AR 31, 67-69, 241. These were germane reasons for rejecting Plaintiff's wife's testimony. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (stating that germane reasons are sufficient to reject testimony from lay witness).

### III. CONCLUSION

The decision of the Social Security Commissioner is affirmed and this case is dismissed with prejudice.

Date: September 11, 2019

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge